Alexander (Zander) Blewett, III
Anders Blewett
HOYT & BLEWETT PLLC
501 Second Avenue North
P.O. Box 2807
Great Falls, MT   59403-2807
Phone: (406) 761-1960
Fax: (406) 761-7186
E-mail:  zblewett@hoytandblewett.com
          ablewett@hoytandblewett.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| MICHELE REINHART<br>and DAN DONOVAN, | ) | Cause No.  CV-11-72-M-DWM |
| | ) | |
| Plaintiffs, | ) | Judge: Donald W. Molloy |
| | ) | |
| v. | ) | |
| | ) | **SECOND AMENDED** |
| GREG MORTENSON, DAVID | ) | **COMPLAINT FOR** |
| OLIVER RELIN, PENGUIN | ) | **CLASS ACTION WITH** |
| GROUP (USA), INC., and | ) | **DEMAND FOR JURY TRIAL** |
| MC CONSULTING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CLAIM FOR CLASS ACTION AGAINST MORTENSON, RELIN
PENGUIN and/or MC CONSULTING, INC., FOR FRAUD, DECEIT,
BREACH OF CONTRACT, NEGLIGENT MISREPRESENTATION,
UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST**.

For their claims against Defendants, Plaintiffs state and allege as follows:

1.    Plaintiff, Michele Reinhart, is a citizen of the State of Montana,
residing in Missoula, Missoula County, Montana.

2.    Plaintiff, Dan Donovan, is a citizen of the State of Montana, residing
in Great Falls, Cascade County, Montana.

3.    Defendant, Greg Mortenson (Mortenson), is an individual residing in Bozeman, Montana, and acted as the agent of Penguin in the writing, publishing and promoting of the below-mentioned books.

4.    Defendant, David Oliver Relin (Relin), is an individual residing in Portland, Oregon, and acted as the agent of Penguin in the writing, publishing and promoting of *Three Cups of Tea.*

5.    Defendant Penguin Group (USA), Inc. (Penguin), is a foreign corporation that published the books, *Three Cups of Tea*, written by Mortenson and Relin, and *Stones Into Schools*, written by Mortenson, claiming the books were true works of nonfiction, including, but not limited to, listing the books on the New York Times nonfiction best seller list.

6.    MC Consulting, Inc. (MC), is a Montana corporation, owned and controlled by Mortenson.  It appears Mortenson may have transferred funds from his book sale royalties to MC.

7.    In 1993, Mortenson went on a trip where he climbed in the mountains near K2 in Pakistan.  After he returned from that trip, he hatched a scheme, whereby he thought he could make money for himself and commence a charity through which he could make even more money for himself.  This scheme involved in intricate plan to fabricate facts to make himself into a hero, while publically stating he was heroically doing it all to help unfortunate children in Pakistan and Afghanistan.  He fabricated the facts and then systematically hid the truth of the matters from the public, a number of directors of the Board of Directors of Central Asia Institute, the nonprofit charitable corporation he controlled, and certain employees of Central Asia Institute.  In this regard, he was not truthful about his financial dealings with Central Asia Institute and was not truthful about a number of matters, including, but not limited to, his financial dealings with Central Asia Institute, the number of schools that he built, the

number of children he helped, etc.  He then proceeded to cover up a large number of these falsehoods over a period of many years.

8.     Mortenson, Relin, and/or Penguin have repeatedly fabricated material details in the books *Three Cups of Tea* and *Stones into Schools*.  The purpose of these fabrications was to induce unsuspecting individuals to purchase these books and feel good about Mortenson, thinking he was such a humanitarian for the sole benefit of children.  These fabrications have generated significant sums of money for Mortenson, Relin, and Penguin in the form of book sales, personal fame for Mortenson, and other financial benefits to Mortenson from his charitable work.

9.     Mortenson and Relin wrote the book *Three Cups of Tea* in 2006 and claim to have sold over 4 million copies, many of which were purchased by Central Asia Institute (CAI), the charity controlled by Mortenson, to give extra royalties to Mortenson, Relin, and Penguin and keep the book on the bestseller list.  Mortenson also wrote the book *Stones into Schools* in 2009 and sold a large number of copies.

10.     Penguin either knew that Mortenson's public statements and the two books contained falsehoods or should have known and had a duty to verify Mortenson's and Relin's statements or otherwise exercise reasonable care before publishing these books as true.  Penguin knew more books would be sold if the stories were represented to be true and profited from the misrepresentations that the books were true.

11.     Pursuant to 28 U.S.C. § 1332(d), jurisdiction in Federal District Court is appropriate because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, the class contains more than 100 members, greater than one-third of the class members are citizens of a state different from Defendants', and the principle injuries resulting from Defendants' unlawful conduct occurred outside Montana.

12.     Venue is proper in Missoula County because the torts against Michele Reinhart occurred there and because Michele Reinhart, in her claim against Penguin, is a resident of Missoula County and the contract was to be performed in Missoula County.

13.     These books purport to be true accounts of how Mortenson transitioned from a mountain-climber to an astonishingly brave, selfless humanitarian building schools in Pakistan and Afghanistan for the purposes of educating girls.  Mortenson has repeatedly appeared in public or written in a public forum to recount the events described in these books.  Many of his representations made in the books and in his public speeches and public statements are false.

14.     On or around September 21, 2007, Plaintiff, Michele Reinhart, attended a presentation given by Mortenson at the University of Montana's University Theater.  During this speech, Mortenson indicated his book *Three Cups of Tea* was a true account of the experiences he had in Central Asia and that all his activities were truly selfless, humanitarianism.  Sometime thereafter, Plaintiff, Michele Reinhart, purchased a copy of the book in Missoula, Montana, and paid approximately $15.00.  Dan Donovan heard of the exploits of Mortenson and, relying on the truthfulness of what Mortenson had previously said publicly about his humanitarianism and activities, and relying on the truthfulness of *Three Cups of Tea*, purchased *Stones into Schools* at Barnes and Noble on October 31, 2010, in Great Falls, Montana, and paid $14.40 for this book.

15.     Mortenson, Relin and Penguin agreed with Plaintiffs that what Mortenson, Relin and Penguin publicly represented about Mortenson's activities were true and that the books and public statements were true.  Many of the things that Mortenson, Relin and Penguin were publicly stating and the representations made in the books were false, contrary to the agreement.

-4-

16.     As a result, Mortenson, Relin and Penguin are liable for breach of contract and should disgorge the purchase prices.

17.     In an effort to entice people by his selfless, humanitarianism and to buy the two books, Mortenson, Relin and Penguin have consistently maintained that the statements in the books and Mortenson's public speeches and published writings are true.  His books and public statements contain many fabrications which he, Relin and/or Penguin have repeated publicly on numerous occasions.

18.     Mortenson, Relin and/or Penguin committed actual fraud against Plaintiffs by inducing them to accept Mortenson's selfless, humanitarian qualities and to purchase the books that Mortenson, Relin and Penguin publicly represented to be true works when in fact the books contained numerous fabrications.  The elements of actual fraud have been satisfied because, (1) Mortenson, Relin and Penguin represented to Plaintiffs that the books and his public statements were true accounts based on events which actually took place; (2) The representations were false in that many of the statements were falsified; (3) The representations were material because they pertained to integral aspects of the book's narrative and public statements which led Plaintiffs to believe that they were purchasing books based entirely on factual information from a selfless humanitarian; (4) Mortenson, Relin and/or Penguin knew some  of the representations were false because they described in his books and public statements events involving Mortenson that never occurred; (5) By representing that these books and public statements were based on fact, Mortenson, Relin and/or Penguin intended Plaintiffs to rely upon these misrepresentations and to purchase the books with the mistaken belief that they were true; (6) Plaintiffs were completely ignorant to the fact that Mortenson, Relin and Penguin included fabrications within the books and public statements; (7) Plaintiffs relied upon the truth of the representations to their determent by purchasing the books that they otherwise would not have purchased

had they known of the falsified information; (8) It was reasonable for Plaintiffs to rely upon Mortenson's, Relin's and Penguin's representations because Mortenson and Relin were world renowned authors, and Penguin a well-known publisher. When Mortenson, Relin and Penguin represented that the books and public statements were factual, Plaintiffs had every right to rely upon those representations; (9) Plaintiffs were damaged by their reliance on Mortenson's, Relin's and/or Penguin's false representations in the amount of the purchase prices of the books.

19.    Penguin allowed this deceit and fraud to occur by breaching its duties as a publisher.  Also, and in the alternative, Penguin negligently made representations regarding Mortenson's selfless, humanitarianism and the truthfulness of both books, and Mortenson's public statements the representations were false, Plaintiffs reasonably relied on the false representations and purchased the books and Penguin is liable for all such damages, which also should be placed in the constructive trust.

20.    Mortenson, Relin and Penguin should be forced to disgorge the purchase prices because Michele Reinhart would not have purchased the book *Three Cups of Tea* and Dan Donovan would not have purchased the book *Stones Into Schools* had they known that Mortenson's humanitarianism, public statements and books were based on fabricated information.

21.    Penguin is liable for all the conduct of Mortenson and Relin as it was their principal and they were acting within the scope of their agency relationship at all pertinent times.

22.    The conduct of Mortenson, Relin, Penguin and/or MC constitutes malice and/or other egregious conduct for which a jury should award punitive damages in an amount it determines appropriate under the circumstances.

23.     Mortenson, Relin and/or Penguin are liable to Plaintiffs for the tort of deceit because they willfully deceived Plaintiffs with the intent to induce Plaintiffs to accept his humanitarianism and to purchase the books.

24.     The conduct of Mortenson, Relin and Penguin has resulted in their receiving unjust enrichment to the detriment of Plaintiffs, and Mortenson, Relin and Penguin should be forced to disgorge the books' purchase prices.

25.     MC has been unjustly enriched by receiving any of these funds from Mortenson's book sales and should be forced to disgorge all such funds.

26.     Plaintiff, Michele Reinhart, as a purchaser of *Three Cups of Tea*, and Dan Donovan as a purchaser of *Stones Into Schools,* are representative parties for the class of other individuals who purchased either of Mortenson's books, and have standing to bring this class action.

27.     Based on the fraud, deceit, breach of contract and negligent misrepresentation by Mortenson, Relin and Penguin in dealing with every book purchaser, Mortenson, Relin, Penguin and MC have been unjustly enriched by the purchase prices paid and Mortenson's fame and other financial benefits.  A constructive trust should be created into which all of the funds paid for the books and Mortenson's other financial benefits should flow.  If no constructive trust is established to receive these funds, and Mortenson, Relin and Penguin are permitted to retain the funds, they will be unjustly enriched.  The funds in the constructive trust should then be transferred to an appropriate third-party institution to be selected by the Court for the humanitarian purposes originally stated by Mortenson.  In the alternative, if the constructive trust is not allowed by the Court, the funds should be disgorged to the Plaintiffs and the class members.

28.     This class is so numerous that joinder of all members is impractical and, in this regard, Plaintiffs have no way of determining or joining all members of this class unless this Court certifies this class.  There are questions of law and

questions of fact that are common to the class because Mortenson's, Relin's and/or Penguin's fabrications, which have been publicly reiterated and are also contained in the books, have resulted in a vast number of people purchasing the books. The claims of Plaintiffs and the other class members, and the defenses of Mortenson, Relin, Penguin and MC are typical, if not identical, in all such claims being asserted on behalf of the class. Finally, the Plaintiffs can and will fairly and adequately protect the interests of the class.

29.    This proposed class-action should be certified because the questions of law and/or of fact common to class members predominate over any questions affecting only individual members and there are almost no questions of law or fact that only affect individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. As a practical matter, there is no other available method. In this regard, the Plaintiffs, bringing this class action advise the Court:

(A)    Plaintiffs are in a position to have this issue resolved for all class members who either purchased Mortenson's and Relin's and Penguin's books and for all class members who have been damaged by Mortenson's, Relin's, Penguin's and/or MC's unjust enrichment, breach of contract, deceit, fraud and negligent misrepresentation. These other class members do not have the knowledge, resources, legal expertise, or time to bring these claims individually in separate actions.

(B)    When this complaint was filed, to the knowledge of Plaintiffs, there were no other cases pending against Mortenson, Relin, Penguin or MC concerning the controversy which has already been begun by Plaintiffs individually and on behalf of the class members in this proposed class action.

(C)    The desirability of concentrating the litigation of all of these claims in this particular forum before this particular Court under these

circumstances, where the entire case turns on the common scheme of deceit, fraud, negligent misrepresentation, breach of contract and unjust enrichment, employed by Mortenson, Relin, Penguin or MC is undeniable.

(D)     Although all class actions have certain difficulties, representative Plaintiffs and their counsel feel these difficulties will be much more easily managed through a class action than through the nearly impossible procedure of individual prosecutions.

30.     It appears to Plaintiffs that millions of individuals have been adversely affected by Mortenson's, Relin's and/or Penguin's fabrications.

31.     Mortenson, Relin and Penguin are the entities which have the most direct knowledge of the names and addresses of the persons who purchased the books. In this regard, Mortenson, Relin and Penguin should be required to disclose, as far as they know, the names of all such purchasers of the books.

32.     Mortenson, Relin and Penguin may well not have knowledge of the names and addresses of every person who purchased the books. There is no way to identify a large number of individual class members because Mortenson, Relin and Penguin will most likely not have e-mail or mailing addresses or phone numbers for such class members. In this regard, Plaintiffs will request the Court to approve a class action administrator to disseminate an appropriate class notice. There are nationally recognized administrators for class action legal notice programs and one of them should be used in this case.

WHEREFORE, Plaintiffs pray that the Court, as early as practicable, enter an order certifying this action as a class action for the disgorgement and payment of both book purchases and Mortenson's other ill-gotten funds, and any funds received by MC from book purchases into a constructive trust, with the funds to be used for the humanitarian purposes originally stated by Mortenson, or, in the alternative, the funds should be refunded to the purchasers, pursuant to Rule 23,

F.R.Civ.P., and to define the class, appoint class counsel, create the appropriate notice, appoint a trustee for the constructive trust and/or a class action administrator, pursuant to Rule 23(c)(2), F.R.Civ.P. Also, Plaintiffs pray on behalf of the class, to enter judgment against Mortenson, Relin, Penguin, and MC, funding the constructive trust or, in the alternative, refunding the purchase prices, and awarding punitive damages. Plaintiffs demand trial by jury on the class action claims for all issues which are triable by a jury.

DATED this 14th day of June, 2011.

HOYT & BLEWETT PLLC


_____/s/ Alexander Blewett, III_____
Alexander (Zander) Blewett, III
Anders Blewett
Attorneys for Plaintiffs


## **DEMAND FOR JURY TRIAL**

Plaintiffs demand that all issues be tried before a jury.

DATED this 14th day of June, 2011.

HOYT & BLEWETT PLLC


_____/s/ Alexander Blewett, III_____
Alexander (Zander) Blewett, III
Anders Blewett
Attorneys for Plaintiffs