Charles E. Hansberry
Elena J. Zlatnik
GARLINGTON, LOHN
    & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Telephone (406) 523-2500
Telefax (406) 523-2595
cehansberry@garlington.com
ejzlatnik@garlington.com

Sonia Montablano
Elliott, Ostrander & Preston, P.C
707 SW Washington Street, Suite 1500
Portland, Oregon 97205
Telephone (503) 224-7112
Telefax (503) 224-7819
Sonia@eoplaw.com

Attorneys for David Oliver Relin

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MICHELE REINHART, DAN DONOVAN, and DEBORAH NETTER, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br>    v.<br><br>GREG MORTENSON, DAVID OLIVER RELIN, PENGUIN GROUP (USA), INC., a Delaware Corporation, and MC CONSULTING, INC., a Montana Corporation,<br><br>              Defendants. | Cause No. CV-11-72-M-DWM<br><br><br>MEMORANDUM IN SUPPORT OF DEFENDANT DAVID OLIVER RELIN'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT |

Defendant David Oliver Relin ("Relin") is a writer who assisted in the writing of Greg Mortenson's (Mortenson) memoir *Three Cups of Tea*.  Relin respectfully submits this memorandum of law in support of his motion to dismiss Plaintiffs' Third Amended Complaint (the "Complaint").

INTRODUCTION

Arguments supporting the dismissal of the Plaintiffs' Complaint already have been thoroughly briefed in the Motions to Dismiss filed by Defendants Penguin Group (USA), Inc. ("Penguin"), and Greg Mortenson and MC Consulting, Inc. (MCC).  In the interest of judicial economy, Relin therefore relies on and incorporates herein the co-Defendants' argument and analysis relevant to the claims asserted against him.  Relin emphasizes and expands on those portions of the arguments specifically relevant to the claims against him below.

Plaintiffs filed this action on behalf of a putative class seeking to hold all the Defendants jointly and severally liable for "damages" that are nebulous, at best. Unlike most cases involving the publication of non-fiction books where the claims involve defamation or false-light invasion of privacy brought by characters in the books themselves, this litigation is brought by readers of the books.  In the present case, Plaintiffs' claimed damages arise from alleged factual inaccuracies contained in two books about the humanitarian efforts of Defendant Greg Mortenson ("Mortenson") in Pakistan and Afghanistan.  Defendant Relin is a co-author, along

with Mortenson, of the book *Three Cups of Tea*.  Plaintiffs acknowledge that
Mortenson is the sole author of *Stones Into Schools*.  Compl. ¶ 10 (May 5, 2011).

In addition to seeking damages somehow caused by the alleged inaccuracies
contained in these *two* books, Plaintiffs seek recovery for alleged
misrepresentations by Mortenson to "the public, a number of directors of the Board
of Directors of Central Asia Institute, the nonprofit that charitable corporation
[Mortenson] controlled, and certain employees of Central Asia Institute."  Compl.¶
8.  The Complaint does not contain a single allegation that Relin is involved in any
manner in the Central Asia Institute.  It is unclear from Plaintiffs' Complaint if
they claim Relin had any involvement in these alleged misrepresentations.

Penguin cites extensive and unanimous authority holding a publisher cannot
be held liable for inaccuracies contained in its publications.  The basis for this
argument lies in the protections afforded by the First Amendment, and the
recognition that allowing publishers to be held liable for inaccurate statements in
their books would have a chilling effect on the free flow of ideas and expression.
While there are very few cases addressing this same issue with respect to authors
of these same publications, every court that has addressed the issue holds that in
circumstances like the present case,  authors (like publishers) enjoy First
Amendment protections from claims premised upon alleged inaccuracies.

Finally, the allegations in the Complaint are deficient for a number of
additional reasons, including lacking any specificity as to which defendant is liable
for what wrong, contrary to the heightened pleading requirements required under
Federal Rule of Civil Procedure 9(b).  The Complaint still does not provide Relin
with any clear idea as to the factual basis for the Plaintiffs' claims against him.
After attempting to state a claim four times,[1] these deficiencies, among others,
warrant a dismissal of the Third Amended Complaint *with prejudice*.

## ARGUMENT

A.    The First Amendment Protects Authors From Liability for
      Negligent Misrepresentation

It is well settled that publishers have no liability for allegedly inaccurate
information contained in their publications.  Following the reasoning of the many
cases that have reached this conclusion, the few courts which have dealt with the
question of the liability of individual authors have held the same.  Absent a duty of
care (which is not present in this case), no such claim may proceed.  *Bailey v.
Huggins Diagnostic & Rehab. Ctr.*, 952 P.2d 768, 771 (Colo. App. 1997).  In
*Bailey*, a woman followed a dentist's advice in a book he had authored, and had

---

[1]    Defendants have actually been named in five lawsuits relating to the alleged
misrepresentations.  Prior to joining this lawsuit as a Plaintiff, Deborah Netter filed
a separate class action in Illinois against three of the defendants named in the case
at issue.  *Deborah Netter v. Greg Mortenson, David Oliver Relin,* No. 11-CV-3915
(N.D. Ill.).

her amalgamated fillings removed.  The (treating) dentist that performed the procedure damaged the plaintiff's teeth.  The plaintiff sued, among others, the author of the book on the theory of negligent misrepresentation, claiming that she had undergone the procedure in reliance upon the author's recommendation.  In its analysis the court examined first whether the author had a duty of care to the plaintiff, and if so, the scope of that duty.  In finding that there was no such duty owed by the author to the plaintiff, the court held, "[t]he social utility of encouraging authors to address issues of public concern, and the magnitude of the burden that would be imposed upon them if a duty of care were recognized, far outweigh the private interest of any individual reader . . . ."  *Bailey*, 952 P.2d at 733 (citations omitted).  The court went on to note that the only cases in which an author had been held liable were the rare instances where a publication was considered comparable to a "product".  *Saloomey v. Jeppesen & Co.,* 707 F.2d 671 (2d Cir. 1983) (aviation chart with incorrect information considered a "defective product").

The few other cases addressing author liability have also held that the First Amendment protects authors from claims based on the statements in their books. *See also Lacoff v. Buena Vista Publg., Inc.* 705 N.Y.S.2d 183, 187-188 (N.Y. S. Ct. 2000) (authors of a book on investing not liable to purchasers who received less than advertised returns on their own investments); *DeMuth Dev. Corp. v. Merck &*

*Co.*, 432 F. Supp. 990 (E.D.N.Y. 1977) (author of drug index not liable for incorrect information regarding specific drug listed due to absence of duty of care); *Reynolds v. Murphy*, 188 S.W.3d 252 (Tex. App.—Fort Worth 2006) (First Amendment protections precluded claims against author of financial newsletter placed in general circulation from claims of negligent misrepresentation, negligence or negligence *per se*[2]).  We have found no authority supporting Plaintiffs' position in a case such as this one.

B.     Plaintiffs' Complaint Fails to Allege a Claim for Fraud

Both Penguin, and Mortenson and MCC, address the lack of specificity in Plaintiffs' claim for fraud, and the Complaint's failure to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  Plaintiffs know why they purchased the books they did, and what information they subsequently learned that has now supposedly resulted in a diminishment of their enjoyment of their prior purchase.  However, rather than specify the statements made or section of the book that forms the basis for their fraud claim (and all other claims), they have asserted merely conclusory allegations that leave Relin guessing as to the accusations against him.

---

[2]     It is worth noting that all of the plaintiffs in the cases named above suffered actual monetary loss as a result of relying on statements in the author's books.  In contrast, here, Plaintiffs seek refunds for books they have already purchased, the enjoyment of which Plaintiffs claim was diminished after supposedly learning that third parties have challenged some of the information contained in the book.

Moreover, the Complaint does not allege any specific misrepresentation by Relin which the Plaintiffs rely upon.  To assert a claim of fraud, the Plaintiffs must first allege with particularity the elements of fraud in Montana:  (1) a representation; (2) falsity; (3) materiality; (4) speaker's knowledge of falsity; (5) speaker's intent that the representation be acted upon by the hearer; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance; (8) the hearer's right to rely; and (9) the hearer's consequent and proximate damage.  *In re Est. of Kindsfather*, 2005 MT 51, ¶¶17, 51, 326 Mont. 192, 108 P.3d 487[3].  Where there is no allegation or proof that the defendant made a false representation, a cause of action for fraud will not lie.  *Sprunk v. First Bank W. Mont. Missoula*, 228 Mont. 168, 174, 741 P.2d 766, 770 (1987) (plaintiff failed to produce evidence of a "specific false representations" by the defendant).

In the typical case where plaintiffs have asserted claims for fraud, those plaintiffs took some action <u>after</u> reading – and in reliance on – alleged false representations in the book which then caused them to suffer actual monetary loss as a result of those actions.  *See e.g. Reynolds*, 188 S.W.3d at 257 (plaintiff follows

---

[3]       For purposes of the Motion to Dismiss, Relin presumes Montana law is applicable.  *See e.g. Speyer v. Avis Rent a Car Sys., Inc.*, 415 F. Supp. 2d 1090, 1094 (S.D.Cal. 2005) (citation omitted) (in ruling on a motion to dismiss a class action complaint prior to class certification, courts generally consider only the claims of the named plaintiffs).  However, should the court certify a class, Relin reserves the right to assert the law of a different jurisdiction governs the claims made by the class.

incorrect investing advice in newsletter).  Here, Plaintiffs have not alleged that they took any actions in reliance on specific statements or anecdotes written by Relin in the books; indeed that would put the reliance element in front of the misrepresentation element temporally.  Instead, they assert that they initially purchased the book in reliance on statements that the content of the book was non-fiction, some aspects of which (Plaintiffs do not say which) later turned out to be false.  *See* Compl. ¶ 15.  In other words, it is not the anecdotes and stories themselves which the Plaintiffs allegedly relied upon; rather it was the representation that the anecdotes contained therein were true and the book was non-fiction.  As a result, they seek a refund of the purchase price they paid for the book(s).

Missing from the Complaint is any allegation that Relin himself represented anything to these Plaintiffs.  Plaintiff Reinhart asserts she purchased the book after representations by Mortenson at a speech he conducted at the University of Montana.  It is not clear what Plaintiffs Donovan and Netter "heard of the exploits of Mortenson" in relying on in purchasing the books, much less who made that representation, or what it was.

Relin co-authored only one book with Mortenson, and even under Plaintiffs' theory could at most only be responsible for damages connected to *Three Cups of Tea*.  The lack of specificity in the allegations, and the "lumping in" of Relin with

all the Defendants throughout the Complaint, prevents him from knowing what he is to defend against.  The Plaintiffs appear to be using this lawsuit as a "pretext for the discovery of unknown wrongs," the exact circumstance the pleading requirements of Federal Rule of Civil Procedure 9(b) are intended to prevent. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

C.      Plaintiffs Fail to State a Claim Breach of Express or Implied Contract

Counts I and II of Plaintiffs' Complaint allege breach of either an express or implied contract.  Montana, like all other jurisdictions we are aware of, requires privity in order for one party to sue the other for breach.  Allegations of breach – standing alone—are insufficient.  In *State ex rel. Buttrey Foods, Inc. v. District Court of Third Judicial District*, 148 Mont. 350, 420 P.2d 845 (1966), the issue was whether a subtenant could sue a landlord – Buttrey – for allegedly breaching the lease agreement it had with its tenant.  Buttrey moved to dismiss the claim on the grounds that it was not in privity of contract with the subtenant.  After the district court denied the motion, Buttrey successfully sought supervisory control and the Montana Supreme Court reversed.  In issuing its reversal, the Court relied on its definition of privity from *Hyink v. Low Line Irrigation Co.*, 62 Mont. 401, 205 P. 236, 237-238 (1922) (citations omitted) ("To constitute either an express contract or one by implication upon which an action at law may be based, the parties must occupy toward each other a contract status, and there must be that

connection, mutuality of intention, and interaction of parties generally expressed by the term 'privity'").  In applying this definition – which applies to both express and implied contracts – the Court held:

> [W]e are unable to find any allegations in the plaintiffs' complaint that establish the requisite privity of contract between plaintiffs and Buttrey.  Therefore, we hold that the complaint fails to state a claim against Buttrey upon which relief can be granted to the plaintiffs.

*Buttrey*, 420 P.2d at 847.

Similarly the Complaint in this case lacks any allegations that establish the requisite privity to bring a claim of express or implied contract under Montana law.  Relin, like all authors, wrote and sold a book to the publisher, Penguin.  None of the Plaintiffs allege that they purchased the books from Relin.  Indeed, two allege that they purchased one of the two books (of which Relin wrote only one) from a bookstore, Barnes & Noble.  Presumably, the publisher sold the book to Barnes & Noble who then resold them on the retail market.  But, like the landlord and sub-tenant in Buttrey, what is missing is the direct contractual relationship or privity between Relin, the author, and the ultimate reader.  If Plaintiffs wish to bring a claim for breach of contract, they need to sue the bookstores from whom they purchased the books.

D.    Plaintiffs have Failed to State a Claim for Damages

Penguin accurately characterizes the nature of the Plaintiffs' alleged damages as "retrospective diminished enjoyment."  Penguin's Motion to Dismiss

at 2.  Here, Plaintiffs purchased books, read them, and presumably, enjoyed them. At some later date, in some way that the Plaintiffs do not identify in their Complaint, Plaintiffs claim that they learned of the *possibility* that some of the information contained in the book was inaccurate.

To allow for the recovery of damages in this case would expose <u>every individual</u> who attempted to entertain or provide information to the public in any medium to countless lawsuits seeking similar damages.  By way of analogy, many people donate money to various causes because they are inspired by an individual. Under the Plaintiffs' theory, people who purchased yellow wrist bands sponsored by Lance Armstrong, the proceeds of which were donated to cancer research, are entitled to compensation now that he has been accused of steroid use, so long as they claim they would not have purchased the bracelet had they known of the *possibility* of such use[4].  Under their damages theory, Plaintiffs seek to start a very dangerous precedent leading to limitless liability and endless review of every memoir or similar publication.

//

//

//

---

[4]     Like Lance Armstrong, Mortenson has not been found to have made any misrepresentations or committed any actual wrongdoing.  Plaintiffs' claims are based wholly on conclusory accusations.

CONCLUSION

For the reasons above, and the reasons set forth by Defendants Penguin, Mortenson and MCC, Defendant Relin respectfully requests that the court dismiss the Plaintiffs' Third Amended Complaint, with prejudice.

DATED this 8th day of August, 2011.


/s/   Sonia A. Montalbano
Attorneys for David Oliver Relin

/s/   Charles Hansberry
Attorneys for David Oliver Relin

12

CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that this Memorandum in Support of Defendant David Oliver Relin's Motion to Dismiss Plaintiffs' Third Amended Complaint is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Office Word 2007, is 2,484 words long, excluding Caption, Certificate of Service and Certificate of Compliance.


/s/   Sonia A. Montalbano
Attorneys for David Oliver Relin

/s/   Charles Hansberry
Attorneys for David Oliver Relin