FILED
GREAT FALLS

2012 APR 30 AM 9 20

PATRICK E. DUFFY, CLERK

BY _____
DEPUTY CLERK



# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## MISSOULA DIVISION

| | |
|---|---|
| GEORGE and SUSIE PFAU, DAN DONOVAN, and DEBORAH NETTER, individually and on behalf of all others similarly situated, | No. CV-11-72-M-SEH |
| Plaintiffs, | **MEMORANDUM AND ORDER** |
| vs. | |
| GREG MORTENSON, DAVID OLIVER RELIN, CENTRAL ASIA INSTITUTE (CAI), a foreign corporation, PENGUIN GROUP (USA), INC., a Delaware Corporation, and MC CONSULTING, INC., a Montana Corporation, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs in this case allege themselves to be consumers who purchased

either *Three Cups of Tea*, a book coauthored by Defendants Greg Mortenson

-1-

("Mortenson") and David Oliver Relin ("Relin"), or *Stones Into Schools*, a book authored by Mortenson (collectively, "the Books"). Penguin Group, Inc. ("Penguin") published the Books. Plaintiffs claim they were harmed by Defendants when they purchased the Books under the belief they were "nonfiction," although the books were, allegedly, filled with fabrications.

Pending before the Court are Defendants' motions to dismiss Plaintiffs' Fourth Amended Complaint[1] for failure to state a claim upon which relief may be granted, under Federal Rules of Civil Procedure 12(b)(6).[2] All are opposed.

## BACKGROUND[3]

In 1993, Mortenson visited mountains near K-2 in Pakistan.

Some years later, he and Relin coauthored *Three Cups of Tea* as an account of Mortenson's humanitarian efforts in Pakistan. Penguin published the book in 2006. A follow-up book, *Stones Into Schools*, written by Mortenson, was published by Penguin in 2009. Penguin marketed both books as "nonfiction." Central Asia Institute ("CAI"), a nonprofit Delaware corporation, headquartered in Montana, allegedly expended significant sums of money to finance the writing,

---

[1] Docket Nos. 134, 136, 138, and 147.

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedures, unless otherwise noted.

[3] This background summary is drawn from allegations in the Fourth Amended Complaint ("Complaint").

-2-

publishing and sales of the Books. Plaintiffs claim that Mortenson transferred funds from the book sales to MC Consulting, Inc. ("MC"), a Montana corporation asserted to be owned and controlled by Mortenson.

Plaintiffs contend they purchased one or more of the Books for approximately $15 each. They claim that the Books should not be categorized as nonfiction, as a number of misstatements relating to their contents have surfaced, and that Mortenson, Relin, MC, CAI, and Penguin entered into a fraudulent scheme to falsely portray Mortenson as a hero in order to boost book sales.

## PLEADING AND PROCEDURAL HISTORY

On May 5, 2011, a class action complaint alleging fraud, deceit, breach of contract, RICO violations, and unjust enrichment was brought against Mortenson and CAI.[4] An amended complaint was filed six days later, which added Penguin as a Defendant and Dan Donovan as a Plaintiff. Negligent misrepresentation claims were also added. The alleged RICO violations were removed.[5] Plaintiffs amended the complaint again on June 17, 2011, removing Jean Price as a Plaintiff, removing CAI as a Defendant, and adding Relin as a Defendant. Plaintiffs' Third

---

[4] The original complaint was filed in this court. Jurisdiction under 28 U.S.C. §§ 1331 and 1332(d) is not disputed.

[5] Docket No. 3.

-3-

Amended Complaint,[6] filed July 27, 2011, asserted breach of contract, breach of

implied contract, fraud, deceit, unjust enrichment, negligent misrepresentations by

Penguin and Relin, liability by Penguin as principal, punitive damages, unjust

enrichment by MC Consulting, for an accounting, for injunctive relief, and class

action allegations. In early August 2011, Mortenson, MC, Penguin, and Relin

filed motions to dismiss. Plaintiffs responded on August 31, 2011. On January

12, 2012, the Court allowed Plaintiffs to file the current pleading, a Fourth

Amended Complaint.[7] This pleading, *inter alia*, reinstated the claimed RICO

violations and again named CAI as a Defendant. Motions to dismiss were

renewed.

No class certification motion under Rule 23(c)(1)(A) has been filed. In the

absence of such motion and in the interests of judicial economy, the Court has

determined it appropriate to address and resolve the pending motions to dismiss.[8]

Hearing on the motions was held on April 18, 2012. The matter is ripe for

_____

[6] Docket No. 38.

[7] Docket No. 119.

[8] See Wade v. Kirkland, 118 F.3d 667, 670 (9th Cir. 1997) ("We recognize that, in some
cases, it may be appropriate in the interest of judicial economy to resolve a motion for summary
judgment or motion to dismiss prior to ruling on class certification"); Wright v. Schock, 742 F.2d
541, 543-44 (9th Cir. 1984) (court properly ruled on motion for summary judgment before
certification because resolution protected parties from needless and costly further litigation and
parties did not suffer prejudice by early determination on merits).

-4-

decision.

## DISCUSSION

Plaintiffs now assert what are denominated as twelve separate causes of action: RICO violations (Counts I and II), Breach of Contract (Count III), Breach of Implied Contract (Count IV), Fraud (Count V), Deceit (Count VI), Unjust Enrichment (Count VII), Penguin Liable as Principal (VIII), Punitive Damages (Count IX),[9] Unjust Enrichment by MC (Count X), Accounting and Injunctive Relief (Count XI), and Class Action (Count XII). Defendants argue, *inter alia*, that Plaintiffs' claims are barred by the First Amendment, and that the Complaint fails to (1) plead fraudulent activity with particularity, (2) meet plausibility standards, (3) plead necessary elements, and (4) allege cognizable injuries.

### Standard of Review

Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give a defendant a fair notice of what the claim is and the grounds upon which it is based. "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party" in assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6). Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

---

[9] As stated infra n. 32, punitive damages, if available, are a measure of recovery, not a separate claim or cause of action.

-5-

337-38 (9th Cir. 1996).

A two-step analytical process for determining the sufficiency of pleadings under Rule 8 was established by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). In step one, the court determines which allegations are merely "labels and conclusions," "formulaic recitations," or "naked assertion[s]." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555, 557). The reviewing court need not accept the truth of such allegations. Id. Step two requires the court to determine whether the remaining allegations, which the court must accept as true, "plausibly give rise to an entitlement to relief." Iqbal, 550 U.S. at 679. The reviewing court, in determining plausibility, is required to engage in a context-specific task drawing on the court's "judicial experience and common sense." Iqbal, 550 U.S. at 679. Satisfaction of this pleading requirement does not oblige the pleader to show probability of entitlement to relief, just plausibility.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake, [while] [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Iqbal acknowledged that Rule 9(b) allows "a person's mind to be alleged generally," but does "not require courts to credit a complaint's conclusory statements without

-6-

reference to its factual context." Iqbal, 556 U.S. at 686. "Rule 9 . . . excuses a party from pleading discriminatory intent under an elevated pleading standard," but does not enable evasion of "the less rigid . . . strictures of Rule 8." Iqbal, 556 U.S. at 686-87.

## Plaintiffs' Claims

### A.    Counts I and II - RICO Claims

"The elements of a civil RICO claim are . . . : (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property'." Living Designs, Inc. v. E.I. Dupont de Nemours, 431 F.3d 353, 361 (9th Cir. 2005)(citing Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996)(citing 18 U.S.C. § 1964(c), 1962(c)). To plead causation, Plaintiffs must allege that Defendants' violation was both the direct and the proximate cause of a concrete financial injury. See Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1117 (9th Cir. 1999).

All RICO claims involving fraud must be alleged with particularity under Rule 9(b), and require plaintiffs to allege "the time, place, manner of each predicate act, the nature of the scheme involved, and the role of each defendant in the scheme." Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991). Furthermore, "Rule 9(b) does not allow a complaint to

merely lump multiple defendants together." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). Plaintiffs are "require[d] to differentiate . . . allegations when suing more than one defendant . . . and [must] inform each defendant separately of the allegations surrounding [that defendant's] alleged participation in the fraud." Swartz, 476 F.3d at 764-65 (citing Haskin v. R.J. Reynolds Tobacco Co., 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)(citation, quotation omitted).

Plaintiffs' RICO claims[10] attempt to establish, in a general fashion, the time, place, manner of each predicate act, the nature of the scheme involved, and the role of each defendant in the scheme. The primary racketeering activity alleged is the Defendants' "ongoing scheme to defraud and actually defrauding purchasers of the books over at least an eight year period and continuing to this day, where they continued to misrepresent that the contents of [the Books] were true, nonfiction accounts of what really happened, when, in fact, the contents were false and the accounts did not happen."[11]  Essentially, Plaintiffs contend that Defendants knew the truth, but portrayed Mortenson into a hero in order to persuade people to buy the Books, which financially benefitted the Defendants.

---

[10] Fourth Am. Compl. at ¶¶ 15-16 (Jan. 1, 2012)("Compl."). Plaintiffs allege that the enterprise devised and intended to devise a scheme or artifice to defraud and to obtain money by means of false and fraudulent pretenses and representations and for the purpose of executing such schemes and artifice.

[11] Compl. at ¶ 12.

-8-

Plaintiffs begin their factual accusations by listing several alleged

fabrications within the Books, which the enterprise wrote. Plaintiffs next describe

numerous lies said to have taken place after the Books were written. Examples

include CAI purchasing many of the Books from outlets, the enterprise using

"fraudulent speaking engagements," paying Mortenson's expenses, and

advertising and promoting the Books.[12] Many of these purported lies do not

actually appear to be untruthful or illegal, and are overly vague.[13]

The Complaint rests on two primary arguments: (1) the enterprise advertised

and promoted the books;[14] and (2) the enterprise caused Mortenson to make

several public statements regarding good works he performed which were purely

fabricated.[15] Plaintiffs also allege, "[o]n information and belief, [that] Mortenson .

. . transferred funds from his book sales to MC and otherwise involved MC in the

marketing and sale of the books."[16]

---

[12] Compl. at ¶ 13 (N-Z).

[13] The Complaint does allege that CAI falsified annual audits, and engaged in possible fraudulent corporate dealings with Mortenson. However, Plaintiffs lack standing to prosecute such acts. See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985); Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008).

[14] The Complaint references several advertisements referring to the Books as true stories or having appeared on a best-selling nonfiction list.

[15] The Complaint references a 2007 book tour, an April 16, 2011, press release, an April 15, 2010, website entry, and a webinar post in April 2010. Compl. at ¶ 13 (T-Z ).

[16] Compl. at ¶ 8.

The Complaint states, in support of causation, that the individual Plaintiffs purchased the Books because it was "represented to [them] as true."[17] The RICO claims assert: "There is no question but that Plaintiffs did rely on such fraud and misrepresentations of the enterprise so as to show causation for their individual damages, but there is no requirement to show that every victim to the enterprise's mail fraud and wire fraud relied upon the fraud in order to recover."[18]

Plaintiffs assert they suffered concrete financial loss when they paid full price for a nonfiction book when it was fiction. The financial loss is alleged to be "the out-of-pocket loss, . . . minus the value of the false and fraudulent "nonfiction" books, which is [characterized as] zero."[19]

The RICO claims are fraught with shortcomings, including failure to satisfy causal elements, failure to specify the roles of the Defendants, not adequately pleading enterprise theories, and failure to specify an actionable, identifiable racketeering activity. Failure to adequately address the causal elements is the ultimate and fatal flaw. The Complaint does not state, nor is it possible to

---

[17] Id. at ¶ 1, 2, 3, and 33.

[18] Id. at ¶ 17.

[19] Paragraph 19 of the Complaint states that "[t]he out-of-pocket measure of damages is the difference in the actual value between what the Plaintiffs paid and what they received and will restore the Plaintiffs to the financial position they enjoyed prior to the fraudulent transaction."

ascertain, whether Plaintiffs would have purchased the Books if: (1) the Books were labeled or marketed as fiction; or (2) the readers knew portions of the Books, as claimed, were fabricated. Plaintiffs' overly broad statements that they paid approximately $15 for the Books because they were represented as true does not suffice. Additionally, Plaintiffs fail to allege when they purchased the Books, which is crucial in analyzing this case.[20] In fact, Plaintiffs never allege they visited CAI's website or saw or heard any statements made by it before purchasing the Books.

The Complaint likewise does not differentiate allegations against each Defendant, nor does it inform Defendants separately of the allegations surrounding any alleged participation in the fraud. General statements that the enterprise caused Mortenson to make various false statements relating to his life experiences do not satisfy Twombly and Iqbal standards.[21] Pleaded examples of how the enterprise marketed and promoted the Books also fail to satisfy appropriate pleading standards. Members of the enterprise cannot be expected to defend against Plaintiffs' claims, when each participant's role is only vaguely described, if at all. Furthermore, it is not clear what role Relin played in this matter, aside

---

[20] For example, the Complaint makes no distinction between purchases made before or after Plaintiffs became aware that the Books were allegedly fabricated.

[21] Compl. at ¶ 13 (T-Y).

-11-

from coauthoring *Three Cups of Tea*, as all references to him are lumped together with Mortenson and Penguin, and any alleged wrongdoings attributed to him are clearly "labels and conclusions" or "naked assertions."

The Complaint's conclusory allegations referencing the legal elements of a RICO enterprise fail. The "enterprise" element is not met. See U.S. v. Turkette, 452 U.S. 576, 583 (1981). Moreover, no RICO claim through an "associate-in-fact enterprise" theory, is pleaded. [22] Evidence supporting such a theory is missing from the Complaint.

As noted, the primary wrongdoing claimed is that Defendants allegedly knew of the Books' falsehoods and decided to write, promote, and sell them under the guise of nonfiction. Those conclusory statements as to the Defendants' alleged intentional wrongdoings are included without reference to their factual context, much like the plaintiff in Iqbal. [23] With the exception of Mortenson, upon whose life experiences the Books are based, this Court cannot give credit to such unsupported accusations. The Complaint does not satisfy RICO elements. The

---

[22] An associate-in-fact enterprise is comprised of "a group of persons associated together for a common purpose of engaging in a course of conduct." Turkette, 452 U.S. 581-83. Both "evidence of an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit" must be alleged. Id.

[23] In Iqbal, the plaintiff's complaint alleged, *inter alia*, that the defendants (FBI officials, among other governmental entities) "knew of, condoned, and willfully and maliciously agreed" to subject him to harsh conditions of confinement. Iqbal, 556 U.S. at 669.

RICO claims are not plausible and fail.

## B. Counts V and VI - Fraud and Deceit

A common law fraud pleading must allege nine elements: "(1) a
representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its
falsity or ignorance of its truth; (5) the speaker's intent that it should be acted
upon by the person and in the manner reasonably contemplated; (6) the hearer's
ignorance of its falsity; (7) the hearer's reliance upon its truth; (8) the right of the
hearer to rely upon it; and (9) the hearer's consequent and proximate injury or
damage" caused by their reliance on the representation. May v. ERA Landmark
Real Estate of Bozeman, 15 P.3d 1179, 1182 (Mont. 2000). The heightened
pleading standard of Rule 9(b) must be met. See Bly-Magee v. California, 236
F.3d 1014, 1018 (9th Cir. 2001); Fraunhofer v. Price, 594 P.2d 324, 328 (Mont.
1979).

Under Montana law, deceit may be proven if "[o]ne . . . willfully deceives
another with [the] intent to induce that person to alter the person's position to [his]
injury or risk." Mont. Code Ann. § 27-1-712. Deceit can be either: (a) suggesting
a falsity as a fact "by one who does not believe it to be true;" (b) asserting "as a
fact [something] which is not true by one who has no reasonable ground for
believing it to be true;" (c) suppressing "a fact by one who is bound to disclose it

-13-

or who gives information of other facts that are likely to mislead for want of communication of that fact; or (d) a promise made without any intention of performing it. Id. Additionally, "[o]ne who practices . . . deceit with intent to defraud the public or a particular class of persons is considered to have intended to defraud every individual in that class who is actually misled by the deceit. Id. Deceit is essentially grounded in fraud, therefore, Rule 9(b)'s heightened pleading standard applies. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-05 (9th Cir. 2003).

The fraud and deceit claims incorporate allegations from the RICO claims. Formulaic recitations of elements of fraud and deceit are added.

Plaintiffs assert that the fraud and deceit claims meet Rule 9(b)'s specificity requirements. Not so. The fraud pleadings in point of fact are weakened by incorporation of the flawed RICO allegations. Moreover, the Complaint fails to specify what representation the Plaintiffs relied upon[24] or the materiality of that representation. Plaintiffs are not entitled to rely on general allegations of purported lies within the Books' content. At a minimum, Plaintiffs must show that they relied on some particular statement by the Defendants made outside the text of the Books. A formulaic statement of the elements of fraud in this instance is

---

[24] For example, a book tour, website, or a nonfiction print on a cover.

-14-

insufficient. Here, important, and indeed, necessary, facts supporting the elements are missing. The fraud claim (Count V) as pleaded is not plausible and must be dismissed. The same conclusion applies to the deceit claim (Count VI), which likewise lacks factual support allowing it to continue.

## C.   Counts III and IV - Breaches of Contract and Implied Contract

A contract must contain: "(1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." Mont. Code Ann. § 28-2-102; Interstate Prod. Credit Ass'n. v. Abbott, 726 P.2d 824, 826 (Mont. 1986). The parties' "consent . . . must be free, mutual, and communicated by each to the other." Mont. Code Ann. § 28-2-301; Abbott, 726 P.2d at 826; See also Keesum Partners v. Ferdig Oil Co. Inc., 816 P.2d 417, 421 (Mont. 1991). If the contract's terms "are stated in words," an express contract is found. Mont. Code Ann. § 28-2-103. If the "existence and terms" of an agreement "are manifested by conduct," rather than words, an implied contract may exist. Id. An implied "contract arises not from consent of the parties but from the law of natural justice and equity, and is based on the doctrine of unjust enrichment." Brown v. Thornton, 432 P.2d 386, 390 (Mont. 1967).

Assertion of a claim for breach of contract requires privity of contract between plaintiff and defendant. State ex rel. Buttrey Foods, Inc. v. Dist. Court of

-15-

Third Judicial Dist., 420 P.2d 845, 847 (Mont. 1966). The Court has not found

and the parties have not referenced controlling authority or persuasive case law in

the Ninth Circuit directed to privity of contract between an author or publisher of a

book and a reader who purchased such book. The Second Circuit's principle that

a news publisher is not in privity with the publication's purchasers, absent "fraud

amounting to deceit, libel, or slander" is, however, persuasive. First Equity Corp.

of Fla. v. Standard & Poor's Corp., 869 F.2d 175, 179 (2d Cir. 1989); See also

Jaillet v. Cashman, 115 Misc. 383, 384 (N.Y. Sup. Ct. 1921).[25]

The Ninth Circuit has cited First Equity in holding that a book publisher

owed no duty to a car dealership owner for allegedly publishing errors concerning

emission systems in automobiles. Sinai v. Mitchell Books, 996 F.2d 1227 (9th Cir.

1993). Incidentally, Lacoff v. Buena Vista Pub., Inc., 183 Misc. 2d 600, 611

(N.Y. Sup. Ct. 2000) cited Sinai in supporting that publishers have no duty to

investigate the accuracy of its books. Lacoff dismissed a consumer action against

a publisher and arranger of a "how to" book for alleged false claims within the

books. While contract claims were not discussed in detail in those cases, they

nevertheless serve as a starting point for analyzing privity as it relates to contract

---

[25] Jaillet held that "no contract or fiduciary relationship" existed between a publisher and
"one of a public to whom all news is liable to be disseminated." Jailet, 115 Misc. at 384.

-16-

formation and contract law.[26]

Plaintiffs' contract claim asserts that: (1) "Mortenson, Relin, and Penguin offered . . . the Plaintiffs and the class" (2) "nonfiction and true stories of Mortenson's activities," (3) "Plaintiffs . . . paid for, and received, the . . . books," (4) but many "representations made in the books were false, misleading, deceptive, and contrary to the agreement."[27] Plaintiffs and the class are said to have suffered damages as a result.

The Complaint contains no allegations that the parties entered an express contract with terms expressed in "words." An express contract is not well-pleaded. Iqbal, 556 U.S. at 686-87; Twombly, 550 U.S. at 555-56.

Plaintiffs' alternative breach of implied contract claim states that, "[b]y writing, publishing, advertising, marketing, and promoting [the Books] as nonfiction and true stories, the characteristics of said books became an implied contractual condition of sale upon the purchase thereof by the Plaintiffs and the class."[28] Defendants respond to the contract claims with the argument that the Complaint does not allege Plaintiffs communicated with any Defendant, and

---

[26] This Court is not, however, analyzing an author or publisher's First Amendment protection, if any, but rather their relationship to readers as it applies to contract formation.

[27] Compl. at ¶ 35.

[28] Compl. at ¶ 39.

-17-

therefore, consent is not found, and there is no privity of contract, which Montana requires in contract claims. See Buttrey Foods, Inc., 420 P.2d at 847 (complaint alleging breach of a lease agreement alone, without establishing the requisite privity of contract between the parties, fails to state a claim).[29]

The Court cannot accept as true, and as a matter of sufficiency of pleading, Plaintiffs' conclusory statement that "[b]y writing, publishing, advertising, marketing, and promoting [the Books] as nonfiction and true stories, the characteristics of said books became an implied contractual condition of sale." More is necessary if an implied contract is to be found.

The Complaint, arguably, may be said to adequately plead two of the four elements necessary in a breach of implied contract claim. The implied contract claim could be said to plead a lawful object (a book sale), and identifiable parties capable of contracting (Plaintiffs as purchasers, and Relin, Mortenson, and Penguin as authors and publisher). However, consent and consideration are not shown.

Plaintiffs claim to have paid $15 consideration to receive the Books. Whether Penguin, Mortenson, Relin or someone else received Plaintiffs' money is not asserted. Penguin, as publisher, arguably may have received a portion of the

---

[29] The Court is aware that privity is not required in Consumer Protections Act or certain tort claims, however, no such claims are made in the present case.

money, but the Complaint does not indicate whether Relin or Mortenson received any part of the consideration. Although further investigation might reveal a contract between Penguin and the authors entitling Relin and Mortenson to some share of the profits, the Complaint does not so allege.

Even if consideration were not at issue, consent has not been shown. Plaintiffs fail to establish whether Mortenson, or Relin, or Penguin offered the Books for sale, instead naming all three as having offered the Books for sale to purchasers as nonfiction pieces of literature.

The Montana Supreme Court has determined that if an implied contract is to said to exist, the four elements of a contract must still be present and some form of communication and relationship must exist between the parties. See CB & F Development Corp. v. Culbertson State Bank, 844 P.2d 85 (Mont. 1992); Lythgoe v. First Sec. Bank of Helena, 720 P.2d 1184 (Mont. 1986); In re Marriage of Rock, 850 P.2d 296 (Mont. 1993); McNulty v. Bewley Corp., 596 P.2d 474 (Mont. 1979); St. James Cmty. Hosp. v. Dept. of Social and Rehabilitation Services, 595 P.2d 379 (Mont. 1979). Such is not the case here.

The conclusion reached in Jaillet and First Equity that no privity exists between a publisher or author, and a purchasing reader is sound. Plaintiffs here failed to cite any law supporting that a contract existed between the parties and,

while the conduct of the parties may be considered in assessing whether an implied contract existed, the abstract facts pleaded here do not rise to that level. Neither the contract claim nor the implied contract claim survives. Both must be dismissed.[30]

## D. Remaining Claims

"[U]njust enrichment is an equitable means of preventing one party from benefitting from his . . . wrongful acts." Hinebauch v. McRae, 264 P.3d 1098, 1103-04 (Mont. 2011)(citing Estate of Pruyn v. Axmen Propane, Inc., 223 P.3d 845 (Mont. 2009)(citations omitted). Even "in the absence of a contract between parties, [unjust enrichment] may create an implied contract in law." Id. To prevail on a claim for unjust enrichment, a "plaintiff must show some element of misconduct or fault on the part of the defendant, or that the defendant somehow took advantage of the plaintiff." Randolph V. Peterson, Inc. v. J.R. Simplot Co., 778 P.2d 879, 883 (Mont. 1989)(citing Brown v. Thornton, 432 P.2d 386, 390 (Mont. 1967)). As previously discussed, Plaintiffs have failed to sufficiently allege reliance, cognizable injury, and misconduct against the Defendants. The

---

[30] No resolution of Defendants' lack of damages argument is required. Several questions, nevertheless, remain as to whether Plaintiffs could prove compensable injuries or damages. However, the court has found no controlling authority to support the conclusion that a purchaser of a so-called nonfiction memoir based on an actual person, which includes fabrications, suffers a cognizable injury. See In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig., 155 F. Supp. 2d 1069 (S.D. Ind. 2001); Small v. Lorillard Tobacco Co., 94 N.Y. 2d 43 (N.Y. 1999).

Unjust Enrichment claims (Counts VII and X) are dismissed.

An injunction "is appropriate [only] when a party demonstrates '(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate . . . ; (3) that, considering the balance of hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" Northern Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir. 2007)(citing eBay Inc. V. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). Plaintiffs fail to allege an "irreparable injury" or that remedies at law are inadequate, as evidenced by Plaintiffs' specific damage request (the price of the books).[31] Plaintiffs also fail to demonstrate that, in considering the hardship between the parties, a remedy in equity is warranted. The Injunction claim (Count XI) fails and is dismissed.

An accounting must show that there is some relationship between the parties requiring an accounting, and that the plaintiff is entitled to a balance that can only be ascertained by such relief. Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179-80 (2009). Plaintiffs fail to show, or even allege, such a relationship exists. Furthermore, they specifically allege the right to recover a certain sum or a sum that can be made certain by calculation. For these reasons, the Accounting claim

---

[31] Compl. at ¶¶ 19, 22, 24, 33, 36, and 44.

-21-

(Count XI) fails and is dismissed.

Plaintiffs' failure to adequately allege valid causes of action as claimed in Counts I, II, III, IV, V, VI, VII, X, and XI is fatal to the remaining claims in Count VIII (Penguin Liable as Principle), Count XII (Class Action), and Count IX (Punitive Damages).[32]

## CONCLUSION

In short, the Complaint fails and is deficient on several fronts. The RICO, fraud, and deceit claims are not pled with the requisite level of particularity. Plaintiffs fail to satisfy causal elements of RICO, do not identify each Defendant's role in the frauds, present highly questionable enterprise theories, do not adequately identify the alleged racketeering activity, and fail to identify the specific representations and materiality of such representations relied upon. An express contract is not pleaded. An implied contract is not found, as consent and consideration are missing. In the absence of adequate allegations of reliance, cognizable injury, and misconduct against the Defendants, the remaining claims fail.

The question remains as to whether Plaintiffs should be allowed leave to

---

[32] "[P]unitive damages are merely a component of recovery of the underlying" civil claims. Finstad v. W.R. Grace & Co., 8 P.3d 778, 782 (Mont. 2000); see also Mont. Code Ann. § 27-1-220(1).

amend. Five factors are to be, and have been, considered: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004)(citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). "Futility alone can justify the denial of a motion for leave to amend." Id.

The case has been pending for almost a year. The Complaint before the Court is the fifth pleading filed. Plaintiffs have been accorded every opportunity to adequately plead a case, if one exists. Moreover, the imprecise, in part flimsy, and speculative nature of the claims and theories advanced underscore the necessary conclusion that further amendment would be futile. This case will be dismissed with prejudice.[33]

## ORDER

1.    Defendants' Motions to Dismiss[34] are GRANTED.

2.    The Complaint[35] is DISMISSED WITH PREJUDICE.

---

[33] Given the Court's determination on the pleading issues, consideration of First Amendment issues is unnecessary.

[34] Docket Nos. 134, 136, 138, and 147.

[35] Docket No. 119.

-23-

3.    All other pending motions[36] are DENIED as moot.

DATED this __30th__ day of April 2012.

SAM E. HADDON
United States District Judge

---

[36] Docket Nos. 120, 123, 126, and 166.